UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RAYMOND FRANCISCO, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 11-231 L |
| | : | |
| UNITED STATES MARSHALLS SERVICE, | : | |
| CENTRAL FALLS DETENTION FACILITY | : | |
| CORPORATION, | : | |
| WARDEN BRIAN MURPHY, | : | |
| MAJOR COBURN, CAPTAIN SAMOS, | : | |
| LT. SULLIVAN, SERGEANT C.K. CLOUD, | : | |
| C.O. SULLIVAN, SERGEANT SANTUCCI, | : | |
| C.O. OLMO, | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

Plaintiff Raymond Francisco brings this *pro se* action alleging that, during six weeks of his pretrial detention, from October 24 through December 6, 2010, he was subjected to unnecessary, malicious and sadistic force and denied access to counsel and the courts; his claims are based on 42 U.S.C. § 1983, Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), as well as Rhode Island state law.  The suit originally named the Central Falls Detention Facility Corp. and AVCORR Management, LLC, both of which were dismissed as a result of screening under 28 U.S.C. § 1915(e)(2), and the United States Marshals Service ("USMS"), which was dismissed at Plaintiff's request after the USMS motion to dismiss was filed.  The remaining defendants are various officers at the Donald W. Wyatt Facility ("Wyatt"), a privately-run detention facility in Central Falls, Rhode Island, where Plaintiff was

detained from June 15 through December 7, 2010.  They are Warden Murphy,[1] Major Coburn,

Captain Samos, Lieutenant Sullivan, Sergeant Cloud, Sergeant Santucci, Correctional Officer

Sullivan and Correctional Officer Olmo (collectively, "the Moving Defendants").

The Moving Defendants have challenged the adequacy of Plaintiff's Complaint by this

Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which has been referred to me for

recommended findings and disposition.  For the reasons that follow, I recommend that the

Motion be granted in part and denied in part.

## I.      BACKGROUND FACTS

### A. Procedural Background

 On July 14, 2010, Plaintiff was charged by a four count indictment in the District of

Massachusetts as a felon in possession of a firearm and ammunition under 18 U.S.C. § 922(g)(1).

United States v. Raymond Francisco, Cr. No. 10-10225-DPW.  He voluntarily consented to

pretrial detention and was sent to the Wyatt in Central Falls, Rhode Island, where he remained

until he was transferred to the Plymouth County Correctional Facility ("PCCF") on December 7,

2010.  During the final six weeks of his stay at the Wyatt (the relevant period for purposes of this

Complaint), Plaintiff changed counsel at his own request;[2] attorney Page Kelley entered her

appearance for him on November 23, 2010.  She remained his counsel for the duration of his

criminal case.

Plaintiff's subsequent pretrial detention at PCCF also did not go well.  On February 14,

2011, he filed suit in the Massachusetts Superior Court for Plymouth County.  Francisco v.

---

[1] Plaintiff's Complaint misspells the name of the Warden, referring to him as "Murphey."  In this Report and
Recommendation, I refer to him as Warden "Murphy," the correct spelling of his last name.

[2] On October 14, 2010, Plaintiff signed an affidavit averring to significant differences between him and his attorney,
Ian Gold.  Attorney Gold moved to withdraw on November 23, 2010, and attorney Page Kelley entered her
appearance on the same day.  United States v. Raymond Francisco, Cr. No. 10-10225-DPW (D. Mass.), ECF No. 26,
27.  The motion to withdraw was granted on November 29, 2010.

Federal Marshall Service, et al., PLCV 2011-00164.  In a letter to the judge presiding over his criminal case, in which he asked to be transferred from PCCF to another facility, he described this state court action as a suit arising from mistreatment at PCCF: "assault and battery, and excessive force, along with being retaliated against for exercising my right to file grievances." United States v. Raymond Francisco, Cr. No. 10-10225-DPW, ECF No. 48.   Based on the publicly available state court docket, this suit appears to have been dismissed pursuant to Mass. R. Civ. P. 12(b)(6) on April 2, 2012.

The guilt phase of Plaintiff's criminal case ended with his guilty plea to all counts on September 20, 2011.  He was sentenced on May 15, 2012, to 96 months of incarceration followed by five years of supervised release.  Meanwhile, this action, challenging the constitutional (and state law) legitimacy of events during his detention at the Wyatt, was commenced on June 7, 2011.  His thirty-four page Complaint consists of 137 handwritten single-spaced paragraphs; 83 pages of exhibits were added by a motion to amend filed on December 22, 2011, and granted on April 18, 2012.

Senior District Judge Ronald R. Lagueux screened the Complaint pursuant to § 1915(e)(2) and § 1915A; on April 18, 2012, this Court dismissed all claims against the entity defendants, CFDFC and AVCORR, because they are not subject to suit either under Bivens or § 1983, as well as because of the lack of any allegations that these entities directly violated Plaintiff's civil rights through their own actions.  ECF No. 12, at 8.  Judge Lagueux also ruled that the claims against the Moving Defendants are governed by § 1983, and may not proceed as a Bivens action.[3]  ECF No. 12, at 8 & n.6 (citing Lacedra v. Donald W. Wyatt Det. Facility, 334 F.

---

[3] The federal courts are split on whether a claimant can bring a Bivens claims against the individual employees of a privately-run prison like the Wyatt because they are not federal actors; the First Circuit has not addressed the issue. See Mathew v. Central Falls Det. Facility Corp., No. 09-253S, 2011 WL 6056713, at *7-8 (D.R.I. Sept. 30, 2011) (discussing diverging views of the Fourth, Tenth and Eleventh Circuits on one hand and those of the Ninth Circuit

Supp. 2d 114, 136 (D.R.I. 2004)); see also Mathew, 2011 WL 6056713, at * 8.  Subsequently, upon the filing of USMS's Motion to Dismiss for Failure to State a Claim, Plaintiff himself moved to dismiss all claims against USMS, which motion was granted by Judge Lagueux on March 28, 2013.  ECF No. 42.

### B. Factual Background[4]

Plaintiff's detailed Complaint is focused on numerous incidents that occurred during the final six weeks of his detention at the Wyatt.  The first happened on October 24, 2010, and the last was on December 6, 2010, the day before his transfer to PCCF.  His Complaint alleges that the transfer from the Wyatt to PCCF was the result of repeated complaints to USMS by his attorney Page Kelley about the assaults by Wyatt staff and the denial of his right to contact his attorney.[5]

The Complaint paints Plaintiff as a challenging detainee for the Wyatt staff.  Each incident involving allegations of excessive force is alleged to have been initiated by Plaintiff's conduct.  Several of the incidents involved Plaintiff's demands to speak to his attorney or his family, either as the spark that started the incident, or after an initial altercation with guards.  Two of the incidents involved beatings, one of which was followed by two days spent naked,

---

[4] and the Southern District of New York on the other).  This debate is beside the point for purposes of this Motion because the Bivens claims against the Moving Defendants were dismissed at the screening stage.  If one somehow (as the parties appear to) posits that they remain pending, the law of the case doctrine requires that the ruling of the screening Memorandum and Order is controlling.  Ellis v. United States, 313 F.3d 636, 646 (1st Cir. 2002).  Accordingly, to the extent that Counts III and IV, which assert Bivens claims against the Moving Defendants, are not already dismissed for failure to state a claim, I recommend that they be dismissed now.

[4] Except where indicated, the operative facts discussed in this Report and Recommendation are based on the allegations in the Complaint, which this Court must take as true in considering a motion to dismiss.  White v. Gittens, 121 F.3d 803, 804 (1st Cir. 1997).

[5] In the Federal Defendant's Motion to Dismiss, this factual allegation is disputed: USMS asserts that Plaintiff was transferred because he caused a serious risk to the safety and security of the Wyatt facility.  ECF No. 34, at 5 n.11.  For purposes of this Motion, this Court disregards the USMS factual assertion and instead accepts the version in the Complaint as true.

handcuffed and shackled. One incident was triggered by Plaintiff's argument with the Wyatt's disciplinary officer about the rules governing administrative proceedings. Another incident is based on the continuance of a disciplinary hearing after Plaintiff insisted on a ruling on what he claimed was a procedural irregularity, which the officer in charge did not understand. The Complaint also bemoans more benign mishaps, such as an incident when Plaintiff was administered the wrong medication apparently in error.

Because each incident involves different causes of action asserted against different officers, a more detailed factual description of each is set out in the discussion below of the specific claims.

## II.     STANDARD OF REVIEW

Rule 12(b)(6) permits this Court to dismiss an action for failure to state a claim upon which relief can be granted. See Fantini v. Salem State College, 557 F.3d 22, 26 (1st Cir. 2009) (citing Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests and allege a plausible entitlement to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007). A plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In evaluating a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor. Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013). The Court need not credit bald assertions or unverifiable conclusions. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d

592, 595 (1st Cir. 2011).  "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S.

at 555 (court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Plaintiff's asserted facts must possess enough heft to show that he is entitled to relief.  Twombly,

550 U.S. at 557.  Because Plaintiff is *pro se*, this Court must review his Complaint (including the

83 pages of the exhibits) with liberality.  Rodi v. S. New England Sch. of Law, 389 F.3d 5, 13

(1st Cir. 2004).

III.   **ANALYSIS OF PLAINTIFF'S § 1983 CLAIMS**

   A.   **Claims of Use of Excessive Force (Counts I and III)**

       The Constitution does not mandate comfortable prisons, but neither does it permit

inhumane ones.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  Corrections officials often make

decisions in haste, under pressure, and without the luxury of a second chance, but they may not

use excessive physical force against prisoners.  Id.; Hudson v. McMillian, 503 U.S. 1, 6 (1992).

The core judicial inquiry is whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm.  Wilkins v. Gaddy, 130 S. Ct.

1175, 1178 (2010) (per curiam).

       The use of excessive physical force against a prisoner may constitute cruel and unusual

punishment even when the inmate does not suffer serious injury.  Id. at 1176.  When prison

officials maliciously and sadistically use force to cause harm, contemporary standards of

decency always are violated whether or not significant injury is evident; otherwise, prison

officials could inflict any physical punishment, no matter how diabolic or inhuman, as long as it

was less than some arbitrary quantity of injury.  Id. at 1178.  However, the extent of injury

suffered by an inmate is relevant because it may suggest whether the use of force could plausibly

have been thought necessary in a particular situation; other factors to the excessive force inquiry include the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the prison officials, and any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7.  Under the Prison Litigation Reform Act, only claims for physical injury are cognizable under § 1983; recovery for mental or emotional injury not related to physical injury is barred.  42 U.S.C. § 1997e(e).

Plaintiff's status as a pretrial detainee means that his excessive force claims are construed as arising under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment.  Surprenent v. Rivas, 424 F.3d 5, 13 (1st Cir. 2005).  The parameters of a detainee's due process rights "are coextensive with the Eighth Amendment's prohibition against cruel and unusual punishment."  Id. at 18.  As with Eighth Amendment claims, the sufficiency of these claims depends on the circumstances under which discipline was meted out – force may be used to restore discipline but not to maliciously or sadistically inflict pain or retaliate for the filing of complaints or grievances.  See Wilkins, 130 S. Ct. at 1178; Surprenant, 424 F.3d at 14.  A pretrial detainee also has a Fourteenth Amendment right to be free from punishment prior to conviction.  Surprenant, 424 F.3d at 13.  A pretrial detainee may be disciplined for a specific infraction committed during his detention, but the discipline imposed must be roughly proportionate to the gravity of the infraction.  Id.  An arbitrary, or disproportionate sanction, or one that furthers no legitimate penological objective, constitutes punishment and is therefore prohibited by the Fourteenth Amendment.  Id.

The Moving Defendants correctly observe that the Complaint ascribes every incident involving the use of force and brutality to discipline caused by Plaintiff's misconduct.  Because "[d]iscipline by prison officials in response to a wide range of misconduct falls within the

7

expected parameters of the sentence imposed by a court of law," the Moving Defendants argue that each such incident of excessive force fails to state a claim.  See Sandin v. Conner, 515 U.S. 472, 485 (1995) (citations omitted).  However, while the force applied to restore order and impose discipline is not actionable, excessive force and brutality as part of discipline may be when the detainee plausibly alleges that he suffered "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 320 (1986); see Moore v. Weeden, CA 09-434M, 2012 WL 733837, at *7 (D.R.I. Mar. 6, 2012).  Accordingly, this Motion turns on whether the allegations in the Complaint plausibly permit the inference only that "force was applied in a good-faith effort to maintain or restore discipline;" on the other hand, if the factual allegations pertaining to a specific incident plausibly permit the inference that force was applied "maliciously and sadistically to cause harm," the claim based on that incident survives.  See Hudson, 503 U.S. at 6; Lyons v. Wall, C.A. No. 08-498-M, 2012 WL 3682983, at *8 (D.R.I. Aug. 24, 2012).

The Moving Defendants' argument overlooks a crucial allegation in the Complaint – Paragraph 79 – ostensibly applicable to all of the Moving Defendants and all of the factual incidents involving the use of force.  It asserts that every incident involved malicious and sadistic conduct, with no legitimate facility management purpose.  In pertinent part, Paragraph 79 provides:

> Each of the [Moving] Defendants acted maliciously and sadistically for the purpose of causing harm, with no legitimate facility management purpose or good faith belief that such harm was necessary, and out of proportion to whatever force, if any, may have been needed.

ECF No. 1, at 21.  Accordingly, the viability under Rule 12(b)(6) of the excessive force claims in this Complaint depends on whether this conclusory paragraph, read in juxtaposition with the factual description of each incident detailed in the Complaint, is sufficient to give rise to "a plausible entitlement to relief."  Twombly, 550 U.S. at 555, 559.

### a. The October 24 Incident – Lieutenant Sullivan, Correctional Officer Olmo

The first incident of alleged excessive force occurred on October 24, 2010, after Plaintiff had been at the Wyatt for four months; it was precipitated by a "Code Call."[6]  Correctional Officer Olmo responded, entering Plaintiff's cell to remove him from the unit.  ECF No. 1 ¶¶ 26-32.  The Complaint describes a difficult altercation, including Plaintiff's aggressive efforts to prevent Officer Olmo from securing him by bracing his body.  Id. ¶¶ 27-29.  While the Complaint asserts that Officer Olmo "tried to slam Mr. Francisco on the concrete floor" and choked Mr. Francisco with a straight "'stiff arm' until he couldn't breathe," it also makes clear that, as soon as Plaintiff was restrained, he was promptly escorted to the Medical Unit for an examination by a nurse for neck pain and marks.  Id. ¶¶ 27, 29, 31.  Further, Plaintiff complains that he told Lieutenant Sullivan that he wanted to file a complaint about the incident, but Lieutenant Sullivan never responded; nevertheless, a grievance pertaining to the incident is among the materials added when Plaintiff amended his Complaint.  Id. ¶ 32.

This incident lacks plausibility as one involving the unnecessary and wanton infliction of pain, rather than one involving prison officials applying force in a good faith effort to maintain or restore discipline.  Hudson, 503 U.S. at 6.  Correctional Officer Olmo is described as facing aggressive resistance from Plaintiff and the force applied is described as being responsive to his resistance.  Further, the Complaint makes clear that as soon as Officer Olmo succeeded in restoring discipline, he and other officers promptly made sure that Plaintiff received medical attention.  Finally, Plaintiff's success in filing a grievance about this incident is clear from the

---

[6] Neither the Complaint nor the parties explain what a "Code Call" is.  However, Plaintiff does not argue against the Moving Defendants' interpretation of it as a discipline episode triggered by Plaintiff's conduct.  Accordingly, the Court accepts it as such.

Complaint; while Lieutenant Sullivan's failure to respond may have been frustrating to Plaintiff, it does not give rise to a constitutional deprivation.  Accordingly, the § 1983 claims based on this incident described in Paragraphs 26-32, directed against Lieutenant Sullivan and Correctional Officer Olmo, should be dismissed.

> **b.  The November 15-17 Incident – Sergeant Santucci, Correctional Officer Sullivan**

The second excessive force incident resulted from Plaintiff's conduct in disobeying "a direct order as a result of his numerous demands to call his attorney."  ECF No. 1 ¶¶ 21-25.  In response, the "SERT" Move Team entered his cell on November 15, 2010, in full riot gear with C-2 oil-based pepper spray.  Id. ¶ 21.  According to the Complaint, Sergeant Santucci and Correctional Officer Sullivan (together with other unknown officers) "repeatedly punched and kicked [Plaintiff] in [his] face," while maneuvering his legs "back and forth so it looked as though [he] was resisting," and then cleared his cell of his property, bringing him to the showers. Id. ¶¶ 22-24.  When he was returned to the cell, he alleges that he was left naked, handcuffed and shackled on a sleeping mat for two days.  Id. ¶¶ 25, 33.  The incident caused a black eye and body soreness.  Id. ¶ 33.  Plaintiff filed a grievance about this incident, "with no reply."  Id. ¶ 35.

By contrast with the first incident, this description, read in conjunction with Paragraph 79, plausibly lays out facts from which it is possible to draw the inference that the beating and other treatment were administered maliciously in retaliation for Plaintiff's demands to call his attorney.  See Hudson, 503 U.S. at 6; Lyons, 2012 WL 3682983, at *10-11.  The facts alleged suggest not only viciousness in protracting the beating beyond what is reasonably necessary to restore order and impose discipline, but also establish that the officers acted in a fashion intentionally calculated to cover up the excessive nature of the force they employed.  See ECF

No. 1 ¶ 23 (while beating Plaintiff, officers moved his legs on camera to give them "more leeway to be excessive").

These facts as set out in Paragraphs 21-25 are sufficient to plausibly state a claim under § 1983 against Sergeant Santucci and Correctional Officer Sullivan.

### c.   The November 22 Incident – Lieutenant Sullivan, Sergeant Cloud

The third incident involving claims of the use of excessive force occurred on November 22, 2010.  ECF No. 1 ¶¶ 45-49.  This time the trigger was a heated argument between Plaintiff and Sergeant Cloud (the disciplinary officer) about the rules governing the administration of disciplinary sanctions and whether Plaintiff should have been stripped of all his privileges. When Plaintiff insisted, "I am demanding for you to follow the rules as I am expected to," the Complaint alleges that Sergeant Cloud, acting under the direction of Lieutenant Sullivan, sprayed Plaintiff through the trap door of his cell with pepper spray, grabbed Plaintiff's hands and arms and attempted to put them through the trap door causing two deep lacerations on both palms and wrists.  Id. ¶¶ 45-48.  The Complaint alleges that the scars caused by the officers' conduct were still visible six months later, at the time of the filing of this action.  Id. ¶¶ 48-49.

Plaintiff's factual description of the verbal altercation with Sergeant Cloud does not provide a reasonable basis for the brutal physical response described in the Complaint.  Read in conjunction with Paragraph 79, this incident plausibly lays out facts from which it is possible to draw the inference that the pepper spray and forcing of Plaintiff's arms through the trap door was done maliciously in retaliation for Plaintiff's challenge to Sergeant Cloud's authority as disciplinary officer and not in connection with a reasonably necessary response to Plaintiff's misconduct.  See Skinner v. Cunningham, 430 F.3d 483, 488 (1st Cir. 2005); Surprenant, 424 F.3d at 14.

The facts alleged about this incident, as laid out in Paragraphs 45-49, are sufficient to plausibly state a claim under § 1983 against Lieutenant Sullivan and Sergeant Cloud.

### d. The December 3-6 Incident – Major Coburn, Lieutenant Sullivan

The final incident involving a claim of excessive force began on Friday, December 3, continued through the weekend and ended on December 6, 2010. ECF No. 1 ¶¶ 55-66. This incident was triggered by Plaintiff's insistence that he wanted to speak with Major Coburn to complain about the manner in which his Disciplinary Board hearing was conducted. When Major Coburn did not appear, Plaintiff placed his hands in the trap door of his cell for several hours as a way to force the issue. Id. ¶ 55. To restore order, a SERT "Move Team" suited in riot gear and armed with pepper spray was sent to the cell, allegedly by Major Coburn. Id. ¶ 56. The Complaint specifies that, this time, the Team did "NOT beat [him]." Id. Nevertheless, the force used to restore order resulted in a deep gash wound to Plaintiff's calf and eye infections due to the pepper spray. Id.

Following this episode, and despite two grievances with no response, Plaintiff was disciplined in that his property was removed from his cell and he left shackled and handcuffed over the weekend without a mattress. Id. ¶¶ 57-59. Plaintiff was told that the removal of the shackles and the return of his mattress would not occur until Major Coburn authorized it. Id. ¶ 61. On the morning of Monday, December 6, 2010, Major Coburn met with Plaintiff as he demanded, but declined Plaintiff's demand to speak to his attorney; moreover, when he was returned to his cell, Lieutenant Sullivan left on the handcuffs and shackles. Id. ¶¶ 62-64. Nevertheless, on the same day, Plaintiff succeeded in reaching his attorney, Page Kelley with the assistance of another detainee. Id. ¶¶ 64-65. As a result, according to the Complaint, the U.S. Marshals transferred Plaintiff to PCCF on December 7, 2010. Id. ¶ 66.

This incident requires a nuanced analysis.  The initial use of force by the SERT Move Team and the initial application of restraints to restore discipline lack the indicia sufficient to permit a plausible inference of a constitutional deprivation, in that the Complaint describes prison officials applying force in a good faith effort to maintain or restore discipline.  Hudson, 503 U.S. at 6.  Plaintiff's admitted conduct in placing his hands in the trap door for hours insisting that he must be allowed to speak to a specific officer is clearly a discipline issue that presents an adequate trigger for a response to restore order through the imposition of force.  The Complaint lacks any factual suggestion that the SERT Move Team's action went beyond what was reasonably necessary to restore order.  See Skinner, 430 F.3d at 489; Moore, 2012 WL 733837, at *7.  Indeed, the Complaint specifies that the SERT Move Team did not beat him, although its actions caused some injury.  ECF No. 1 ¶ 56.  The conclusory statements in Paragraph 79 are insufficient to overcome the absence of facts from which a constitutional deprivation may plausibly be inferred.  Iqbal, 556 U.S. at 678.

By contrast, the decision by Major Coburn and Lieutenant Sullivan to leave Plaintiff in restraints without a mattress throughout the weekend and into Monday permits the inference that this constituted wanton punishment.  Williams v. Benjamin, 77 F.3d 756, 763-64 (4th Cir. 1996) (while initial imposition of restraints does not support inference, leaving plaintiff in four-point restraints for eight hours without washing off mace permits inference that guards were wantonly punishing); Carter v. Symmes, Civil Action No. 06-10273-PBS, 2008 WL 341640, at *5-6 (D. Mass. Feb. 4, 2008) (issue of fact whether excessive force used when prisoner left face down in restraints for three hours).  Although great deference should be afforded prison officials, the

Complaint presents no legitimate purpose for leaving Plaintiff in handcuffs and shackles for almost three days.  Williams, 77 F.3d at 765.[7]

The § 1983 claims based on this incident described in Paragraphs 55-66, directed against Major Coburn and Lieutenant Sullivan plausibly state a claim.

### B.   Claims of Denial of Access to Lawyer and the Courts (Counts II and IV) – Warden Murphy, Major Coburn and Lieutenant Sullivan

Plaintiff's Complaint is interspersed with references to his difficulties in making immediate telephone contact with his attorney, particularly incidents where the trigger for the misconduct that led to alleged use of excessive force was inattention to his demand to speak to his attorney.   The alleged purpose of Plaintiff's demands to telephone his attorney is his desire to consult and obtain her assistance with respect to the treatment he was receiving at the Wyatt; they do not relate to Plaintiff's need to consult about his criminal case.[8]  Thus, the thrust of this claim is that Plaintiff was denied access to counsel in order to prevent him from bringing the abuses at the Wyatt to the attention of a court.

The facts alleged in the Complaint are insufficient to state a claim of denial of access to the courts either as a denial of Due Process or under the Sixth Amendment.  Procunier v.

---

[7] Some courts review prolonged restraint cases through the lens of the Eighth Amendment's deliberate indifference test instead of excessive force.  Compare McCullon v. Brouse, Civil No. 3:10-CV-1541, 2012 WL 4504504, at *12 (M.D. Pa. Sept. 7, 2012) (citing cases for the proposition that prolonged use of restraints is more properly analyzed under deliberate indifference, whereby prison officials may not be deliberately indifferent to harms or injuries suffered by inmates), with Carter, 2008 WL 341640, at *5 (analyzing length of restraint under the excessive force test, in which the question for the court is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm).  Under either test, Plaintiff's allegation passes muster, at least at the pleadings stage.  See Hope v. Pelzer, 536 U.S. 730, 731 (2002) (obvious Eighth Amendment violation when prisoner left handcuffed to hitching post for eight hours); but see Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir. 1999) (finding no Eighth Amendment violation where prisoner was left in handcuffs and leg shackles for a period of twenty-four hours).

[8] If the Complaint alleged that Plaintiff was denied access to his attorney for the purpose of developing his defense to the indictment in his criminal case, the analysis would be somewhat different.  See Benjamin v. Fraser, 264 F.3d 175, 186 (2d Cir. 2001).  The right of the accused to counsel in a criminal prosecution is a direct right, grounded squarely in the text of the Sixth Amendment.  U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.").

Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989).

For example, following the November 15 incident involving the SERT Move Team, Plaintiff demanded to speak to his attorney by putting his hands in the trap door and refusing to remove them. ECF No. 1 ¶ 34. When he was given a telephone on November 18, 2010, he was unable to reach him/her[9] because the operator indicated that the number dialed was not on his phone list. Id. ¶ 36. The Complaint alleges that Major Coburn had authorized the phone numbers for all detainees to be shut off; while Major Coburn assured that the phones would be fixed, the phone was still not working properly later the same day. Id. ¶¶ 36-38. However, the next day, after Plaintiff again attempted to call his attorney and again the phone did not work, he contacted a case manager, who was able to activate his numbers. As a result, he was able to reach Page Kelley, his attorney, to whom he reported "everything." Id. ¶ 44. The incident that began on Friday, December 3, 2010, was also punctuated by demands to call his attorney. Id. ¶¶ 60, 62-64. Ultimately, on Monday, December 6, 2010, another detainee called his attorney for him. Id. ¶ 65. According to the Complaint, Page Kelley promptly called the USMS regarding his allegations of abuse; as a result, he was transferred to PCCF. Id.

Prisoners, including pretrial detainees, have a constitutional right of access to the courts, grounded in the constitutional guarantees of equal protection and due process. See Bounds v. Smith, 430 U.S. 817, 821-22 (1977); Carr v. Tousley, No. CV-06-0125SJLQ, 2009 WL 1514661, at *31 (D. Idaho May 27, 2009). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with

---

[9] The Complaint does not specify which attorney he was trying to reach on November 18. On the relevant days (November 15 through 19, 2010), the public docket for his criminal case indicates that Plaintiff had informed the court that he did not wish to be represented by Attorney Ian Gold but Attorney Page Kelley had not yet entered her appearance.

adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828; see Moore, 2012 WL 733837, at *4.  To recover on such a claim, a prisoner must demonstrate that he suffered an actual injury caused by a deprivation of that right, such as the inability to meet a filing deadline or present a claim.  Lewis v. Casey, 518 U.S. 343, 348, 351-52 (1996); Chase v. Walker, No. 12-58-M, 2012 WL 3776344, at *7 (D.R.I. July 31, 2012). Adequate pleading of actual injury requires a factual allegation that "a nonfrivolous legal claim had been frustrated or was being impeded."  Lewis, 518 U.S. at 353 (internal footnotes omitted).

Plaintiff's allegation of denial of access to the courts as a result of denial of telephone access to his attorney to complain about prison conditions fails to state a claim because the Complaint lacks any suggestion of actual injury.  Plaintiff clearly was able to file grievances (they are attached to his Complaint) about each incident; even more significant, he was successful in getting the relief he sought (transfer out of the Wyatt) as a result of his attorney's intervention.  In the absence of any allegation, plausible or not, of actual injury from the inability to contact his counsel when he wanted to, Count II and IV, alleging denial of access to counsel and the courts, should be dismissed for failure to state a claim.  See Tucker v. Wall, No. CA 07-406 ML, 2010 WL 322155, at *11 (D.R.I. Jan. 27, 2010).

Plaintiff's Complaint also fails because it lacks any factual suggestion that the alleged denial of access to counsel rises to the level of a Sixth Amendment violation.  To the contrary, the Complaint merely describes Plaintiff's frustration with being unable to reach his attorney at specific moments.  See Gilday v. Dubois, 124 F.3d 277, 293-94 (1st Cir. 1997) (no constitutional right for prisoner to use phone "on his own terms"); O'Mara v. Dionne, No. 08-CV-51, 2009 WL 2170986, at *5 (D.N.H. July 20, 2009) ("jail officials are not required to facilitate communication between [pretrial detainees] and counsel at any time or in any manner that a

16

detainee might desire"); Fisher v. Dep't of Corr., No. 92 Civ. 6037 (LAP), 1995 WL 608379, at

*7 (S.D.N.Y. Oct. 16, 1995) (constitution does not require that prisoners are allowed to call

counsel whenever or as frequently as they wish). Rather, each episode ends, within a day or so,

with his being connected with his attorney to whom he claims he told "everything." ECF No. 1 ¶

44. Nothing in the Complaint plausibly suggests Plaintiff's access to counsel was unjustifiably

obstructed. See Stamper v. Campbell Cnty., Civil Action No. 07-49 (WOB), 2009 WL 2242410,

at *3 (E.D. Ky. July 24, 2009) (no denial of access to counsel when pretrial detainee

communicated with attorney many times); Liggins v. Parker, No. 9:04-CV-0966, 2007 WL

2815630, at *11 (N.D.N.Y. Sept. 25, 2007) (same). When a prison's practices infringe on access

to counsel, the infringement should be evaluated in the light of the central objective of prison

administration – safeguarding security and preserving internal order – when determining whether

the restriction violates the Sixth Amendment. Carr, 2009 WL 1514661, at *33 (citing Bell v.

Wolfish, 441 U.S. 520, 547 (1979)); Glisson v. Sangamon Cnty. Sheriff's Dep't, 408 F. Supp. 2d

609, 623 (C.D. Ill. 2006).

Counts II and IV are recommended for dismissal because they fail to state a claim for

denial of access to counsel and the courts.

### C. Claims Against Warden Murphy

"Section 1983 claims do not impose purely supervisory liability." Cordero-Suárez v.

Rodríguez, 689 F.3d 77, 82 (1st Cir. 2012). Rather, § 1983 "aims at persons who have actually

abused their positions of authority . . . ." Cordero- Suárez, 689 F.3d at 82 (quoting Martinez-

Velez v. Rey-Hernandez, 506 F.3d 32, 41 (1st Cir. 2007)); see Grajales v. P.R. Ports Auth., 682

F.3d 40, 47 (1st Cir. 2012) (§ 1983 supervisory liability requires that the supervisor's action or

inaction constitutes "supervisory encouragement, condonation or acquiescence[,] or gross

negligence of the supervisor amounting to deliberate indifference.") (quoting Welch v. Ciampa, 542 F.3d 927, 937 (1st Cir. 2008)).  The law is clear that § 1983 liability may be imposed on a supervisor like Warden Murphy only: (1) if the supervisor is the primary violator or direct participant in the alleged rights-violating incident or (2) if the responsible official supervises, trains, or hires a subordinate with deliberate indifference to the possibility that deficient performance may eventually result in a civil rights violation.  Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009); Flores v. Wall, No. CA 11-69 M, 2012 WL 4471101, at *9 (D.R.I. Aug. 31, 2012).

Beyond the threadbare conclusory allegations in Paragraph 4 (which are entirely deficit of facts), the Complaint alleges absolutely no facts to support a claim against Warden Murphy;[10] accordingly, it is insufficient to proceed against him as a defendant.  See Flores, 2012 WL 4471101, at *11 (dismissing Adult Correctional Institutions warden due to lack of factual support for conclusory allegation that warden knew of plaintiff's transfer to dangerous environment).  Specifically, the Complaint never alleges that Murphy was a primary actor or direct participant in any of the alleged incidents.  Id. at *9-10 (dismissing Director and Assistant Director of Department of Corrections from § 1983 claims because plaintiff did not allege that either was primary actor or direct participant in events).  Plaintiff also has no allegations demonstrating an

---

[10] Plaintiff's Response to Defendants' Motion to Dismiss attempts to inject additional facts regarding Warden Murphy.  This Court may disregard these facts because consideration of a motion under Rule 12(b)(6) should "not look beyond the four corners of the Complaint."  McElheny v. Trans Nat'l Travel, Inc., 165 F. Supp. 2d 190, 194 (D.R.I. 2001).  Nevertheless, to avoid a futile amendment to the Complaint, the Court notes that the new facts are not enough to avoid dismissal of the claims against Warden Murphy.  Plaintiff's suggestion that Warden Murphy "was involved" in the decision to approve the initial move of the SERT Move Team is not only vague, but also legally insufficient where the conduct potentially amounting to a constitutional deprivation was not the use of the SERT Move Team to react to Plaintiff's misconduct, but rather was the allegedly excessive force used by officers following the actions of the Move Team.  Similarly, the fact that Plaintiff spoke to the Warden personally is also not enough to state a claim, where the timing and specific content of the conversation is not stated and the conversation is not linked to any actionable incident.  See Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011) ("not every official who is aware of a problem exhibits deliberate indifference by failing to resolve it").

affirmative link between the behaviors of a subordinate and the action or inaction of Murphy such that his conduct led inexorably to the alleged constitutional violations.  See id. at *10.

The conclusory allegations in Paragraph 4 are insufficient to clear the hurdle to establish supervisory liability under § 1983 – the Complaint fails to state a claim upon which relief can be granted with respect to Warden Murphy.  Accordingly, all claims against him should be dismissed.[11]

### D.  Other Potential Claims

#### a.  Administration of Wrong Medicine – Major Coburn

Plaintiff complains of being given inaccurate medications: he alleges that during a routine medication intake on November 19, 2010, a nurse came to his cell and handed him three or four pills that appeared unfamiliar.  ECF No. 1 ¶ 39.  After consuming the pills, the nurse again came with his "normal pills and tried to give them to me."  Id. ¶¶ 39-41.  Plaintiff asked questions regarding the prior pills and Officer Montgomery informed him that he witnessed the incident and made a report.  Id. ¶¶ 41-42.  Sergeant Santos reported the incident.  Id. ¶ 42.  While Plaintiff does not specify why this incident is the subject of four paragraphs in his Complaint, if it is intended to allege actionable conduct, it fails to state a claim.  Massey v. Rufo, 14 F.3d 44, at *1 (1st Cir. 1994) (unpublished table decision) (negligence and inadvertence in providing medical treatment does not state a valid claim of deliberate difference) (quoting Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

---

[11] Plaintiff includes the same conclusory paragraph about Major Coburn (ECF No. 1 ¶ 5), in addition to the specific factual allegations about use of excessive force and deprivation of access to counsel.  To the extent that Major Coburn's joinder is based on the conclusory paragraph, I recommend that such claims against him should be dismissed for the same reasons that I recommend dismissal of claims against Warden Murphy.

### b.  Continuance of Disciplinary Hearing – Captain Samos

Plaintiff complains about the handling of a scheduled disciplinary hearing with Captain Samos on November 26, 2010, because the Captain was not sufficiently familiar with the procedure and the appointed disciplinary officer, Sergeant Cloud, who was trained to address such matters, had been barred by Major Coburn "to have anything to do with [Plaintiff's] proceedings."  ECF No. 1 ¶ 50.  As a result the hearing was continued.  Id. ¶¶ 51-53.  The Complaint does not assert a discrete claim based on this incident, although it obviously was troublesome to Plaintiff, who devoted three paragraphs to it.  If it is included as potentially actionable conduct inflicting a constitutional deprivation, it fails to state a claim.  See McKenzie v. Rossi-Hill, No. 07-CV-1752-AC, 2009 WL 4891955, at *13 (D. Or. Dec. 16, 2009) ("as a matter of law, misinterpretation of the prison's rules at a disciplinary hearing does not constitute a violation of a prisoner's constitutional right[s].");  Fisher v. Dep't of Corr., No. 92 Civ. 6037 (LAP), 1995 WL 608379, at *5-6 (S.D.N.Y. Oct. 16, 1995) (irregularities at disciplinary hearing insufficient to state a claim).

## IV.  ANALYSIS OF STATE LAW CLAIMS

### A.  Assault and Battery (Count V) – Lieutenant Sullivan, Sergeant Cloud, Sergeant Santucci, Correctional Officer Sullivan, Correctional Officer Olmo

Under Rhode Island law, assault and battery are separate acts, usually arising from the same transaction.  Picard v. Barry Pontiac-Buick, 654 A.2d 690, 694 (R.I. 1995).  An assault is defined as "a physical act of a threatening nature or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm."  Proffitt v. Ricci, 463 A.2d 514, 517 (R.I. 1983) (citations omitted).  Battery is "an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault."  Id.  It is well settled that the exigencies

20

of law enforcement permit officials to employ conduct with the characteristics of assault and battery – "a police officer may use such force as is necessary to effectuate the arrest." Tessier v. LaNois, 198 A.2d 142, 143 (R.I. 1964); see also Ferreira v. City of E. Providence, 568 F. Supp. 2d 197, 208 (D.R.I. 2008) (officers not liable for assault and battery unless their actions rise to the level of excessive or unjustified force); State v. Hurteau, 810 A.2d 222, 225 (R.I. 2002) ("It is a well-developed principle that in making an arrest an officer has the right to use the amount of force that is necessary to properly perform his duty.").

Plaintiff's excessive force claims that fail under § 1983 are similarly deficient under Rhode Island state law; put differently, the incidents that do not support a claim of a constitutional deprivation because the factual allegations simply demonstrate Plaintiff's disobedience and the officers' reasonably necessary reaction also do not state a claim for assault and battery under Rhode Island state law. See State v. Gelinas, 417 A.2d 1381, 1385 (R.I. 1980). However, the three incidents where the factual allegations are sufficient to permit the plausible inference that the force used was not limited to what was necessary to restore order or impose discipline (the November 15-17 incident, ECF No. 1 ¶¶ 21-25; the November 22 incident, id. ¶¶ 45-49; and the December 3-6 incident, id. ¶¶ 59-64) also are sufficient to state a claim of assault and battery under Rhode Island state law against Lieutenant Sullivan, Sergeant Cloud, Sergeant Santucci and Correctional Officer Sullivan.

**B. Intentional Infliction of Emotional Distress (Count VI) – All Moving Defendants**

"To prove intentional infliction of emotional distress, the plaintiff must allege and prove that the defendant intentionally or recklessly engaged in extreme and outrageous conduct, resulting in the plaintiff's severe emotional distress." Wright v. Zielinski, 824 A.2d 494, 499 (R.I. 2003). Such a claim requires that the plaintiff "allege and prove that medically established

physical symptomatology accompany the distress." Francis v. Am. Bankers Life Assurance. Co. of Fla., 861 A.2d 1040, 1046 (R.I. 2004).  Physical manifestations of emotional injury include symptoms such as severe nightmares, severe headaches, occasional suicidal thoughts, sleep disorders, reduced libido, fatigue, stomach pains, loss of appetite, or the inability to socialize or function normally. Perrotti v. Gonicberg, 877 A.2d 631, 638 (R.I. 2005).  In the ordinary case, proof of physical symptomatology requires expert medical testimony on the existence of a causal relationship between the defendant's wrongful conduct and the plaintiff's claimed emotional distress. See id.; Adams v. Uno Rests., Inc., 794 A.2d 489, 492 (R.I. 2002).  This is required "to safeguard against bogus or exaggerated emotional-damage claims." Adams, 794 A.2d at 492.

To define conduct that would support a claim for intentional infliction of emotional distress, the Rhode Island Supreme Court has adopted the Restatement (Second) of Torts § 46 (1965):

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Hoffman v. Davenport-Metcalf, 851 A.2d 1083, 1089-90 (R.I. 2004).  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plausibly allege that the defendant's conduct was intended to cause emotional distress. See Corvello v. New England Gas Co., Inc., 460 F. Supp. 2d 314, 326-27 (D.R.I. 2006).  Similarly, the conduct must plausibly be extreme and outrageous to state a claim of intentional infliction of emotional distress. Ward v. Lotuff, C.A. No. 09-357-ML, 2009 WL 3615970, at *3 (D.R.I. Nov. 2, 2009).  When assessing whether

a complaint states a claim for intentional infliction of emotional distress, the court should disregard embellishments and "rhetorical flourishes" in the allegations.  See LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 511 (1st Cir. 1998).

By contrast with claims arising under § 1983, a government employer or supervisor can be liable for an employee's intentional tort under the doctrine of respondeat superior if the misconduct falls within the scope of employment.  Cruz v. Town of N. Providence, 833 A.2d 1237, 1240 (R.I. 2003).  Prison beatings by correctional officers without cause generally fall outside the scope of employment, but the employer can be liable when the nature of the employee's duty reasonably puts the employer on notice that some force may have to be used by the employee.  See id. (acts of police brutality fall outside the scope of employment, but police officer's work requires use of force that might subject municipality to liability).  However, to proceed against a government agency or supervisor for the wrongful acts of an employee on a state law claim based on respondeat superior, the plaintiff must show the alleged unlawful activity was in furtherance of a practice or policy that was promulgated or ratified by the agency or the supervisor.  Id. at 1240-41; Ensey v. Culhane, 727 A.2d 687, 690 (R.I. 1999).

Plaintiff's Complaint fails to state a legally cognizable claim for intentional infliction of emotional distress against the Moving Defendants for incidents that were justified by Plaintiff's own conduct or for denial of access to counsel or the courts.  Similarly, there are no factual allegations, beyond the conclusory pleading in Paragraphs 4 and 5, that Warden Murphy or Major Coburn, as supervisors, instituted a policy or practice that condoned any intentional conduct, much less conduct that exceeds all bounds of human decency as is required to sustain a claim for intentional infliction of emotional distress.  By contrast, the three incidents (the November 15-17 incident, ECF No.1  ¶¶ 21-25; the November 22 incident, id. ¶¶ 45-49; and the

23

December 3-6 incident, id. ¶¶ 59-64) that permit the plausible inference of a constitutional deprivation also allege the caliber of conduct that could inflict emotional distress and potentially state a claim against Major Coburn, Lieutenant Sullivan, Sergeant Cloud, Sergeant Santucci and Correctional Officer Sullivan.  However, the Complaint is devoid of plausible allegations that Plaintiff sustained medically-recognized physical symptoms as a result of emotional distress, beyond the conclusory statements in Paragraph 122.[12]  Francis, 861 A.2d at 1046-47.  Mindful of Plaintiff's status as a *pro se* plaintiff, I recommend that Plaintiff's claim of intentional infliction of emotional distress be dismissed except as to the three incidents of excessive force.  For those three incidents, I recommend that he be allowed thirty days to file an amended complaint alleging the requisite physical symptoms, if any.  If he does not file an amended complaint, I recommend that Count VI be dismissed.

## C. Fraudulent Misrepresentation and Concealment/Civil Conspiracy (Counts VII and VIII) – Warden Murphy, Major Coburn, Captain Samos, Lieutenant Sullivan and Sergeant Cloud

Under Rhode Island law, to establish a claim for fraudulent misrepresentation, a plaintiff must allege that the defendant "made a [misrepresentation] intending thereby to induce plaintiff to rely thereon" and that the plaintiff justifiably relied thereon to his or her damage.  Clitex Clothing Co. v. DiSanto, 148 A.2d 273, 275 (R.I. 1959); see Travers v. Spidell, 682 A.2d 471, 472-73 (R.I. 1996).  Fraudulent misrepresentation requires factual allegations establishing: (1) a false representation; (2) knowledge of the statement's falsity; (3) intent to induce reliance; and (4) detrimental reliance.  See Women's Dev. Corp. v. City of Cent. Falls, 764 A.2d 151, 161 (R.I. 2001).  Fraudulent concealment also requires intent to induce reliance and detrimental reliance, but it is grounded on the failure to disclose a material fact as opposed to an affirmative

---

[12] Any symptoms suffered by Plaintiff's fiancée are not compensable in this case, which is brought only by Plaintiff. To the extent that he seeks to recover for her injury, such claims should be dismissed.

misrepresentation.  See W. Reserve Life Assurance Co. of Ohio v. Caramadre, 847 F. Supp. 2d

329, 337 (D.R.I. 2012).  A claim of fraudulent concealment is not actionable absent a duty to

disclose.  See id.  The duty to disclose depends on the circumstances and typically arises in

commercial transactions; it encompasses concealment of basic facts when a party knows the

other party is mistaken and will enter an agreement or transaction based on the mistaken belief.

See id.  Finally, a claim for civil conspiracy is not an independent basis of liability, but rather is a

means of establishing joint liability for tortious conduct.  Id. at 341; Read & Lundy, Inc. v.

Wash. Trust Co. of Westerly, 840 A.2d 1099, 1102 (R.I. 2004).

Plaintiff has failed to state a claim of fraudulent misrepresentation or concealment

because there are no factual allegations of intent to induce reliance or detrimental reliance by

Plaintiff.  See Asermely v. Allstate Ins. Co., 728 A.2d 461, 464 (R.I. 1999) ("In order for

fraudulent misrepresentation . . . to be found, the complaining party must show . . . sufficient

proof that the party detrimentally relied upon the fraudulent representation.").  Further, while

Plaintiff makes the conclusory claim that the Moving Defendants had a duty to "reveal the truth

as witness and perpetrators of the events surrounding Plaintiff's abuse," ECF No. 1 ¶ 127, he has

not alleged either the legal basis for such a duty or any facts giving rise to a duty to speak.

Plaintiff was not misled by any of statements or concealment; to the contrary, he alleges he

understood everything and reported it to his attorney.  Id. ¶ 44; W. Reserve Life Assurance Co.

of Ohio v. Conreal LLC, 715 F. Supp. 2d 270, 285 (D.R.I. 2010).  Accordingly, whether Count

VII is analyzed as "fraudulent misrepresentation" or as "fraudulent concealment," it fails to state

a claim and should be dismissed.

In Plaintiff's Complaint, the claim of civil conspiracy is linked to fraudulent

misrepresentation and concealment in that Count VIII alleges that the Moving Defendants took

part in a conspiracy of fraudulent misrepresentation and concealment of their actions as alleged

in Count VII.  Without a legally viable claim for fraudulent misrepresentation and concealment,

Plaintiff's conspiracy claim should also be dismissed.  Guilbeault v. R.J. Reynolds Tobacco Co.,

84 F. Supp. 2d 263, 268 (D.R.I. 2000) (civil conspiracy requires a valid underlying intentional

tort theory).

## V.   CONCLUSION

For the foregoing reasons, I recommend that the Motion to Dismiss the Complaint (ECF

No. 28) of Defendants Warden Brian Murphy, Major Coburn, Captain Samos, Lt. Sullivan,

Sergeant C.K. Cloud, Correctional Officer Sullivan, Sergeant Santucci, and Correctional Officer

Olmo be GRANTED in part and DENIED in part.  Specifically, I recommend dismissal of the

following:

- Counts III and IV, both based on Bivens, should be dismissed for failure to state a claim.

- Counts II and IV, both based on denial of access to counsel and the courts, should be dismissed for failure to state a claim.

- Counts VII and VIII, respectively based on fraudulent misrepresentation and concealment, and civil conspiracy, should be dismissed for failure to state a claim.

- Excessive force claims based on the incident of October 24, 2010, should be dismissed for failure to state a claim.

- Excessive force claims based on actions of the SERT Move Team in initiating the incident of December 3-6, 2010, should be dismissed for failure to state a claim.

- Since the October 24, 2010, incident is the only claim against Correctional Officer Olmo, he should be dismissed entirely from the case.

- Because there are no factual allegations or actionable regarding Warden Murphy, he should be dismissed entirely from the case.

- Because there are no factual allegations or actionable claims asserted against Captain Samos, he should be dismissed entirely from the case.

What should remain are portions of Count I (excessive force) and Count V (assault and battery):

- Excessive force claims arising from the incident of November 15-17, 2010, asserted against Sergeant Santucci and Correctional Officer Sullivan based on § 1983 and assault and battery under Rhode Island law.

- Excessive force claims arising from the incident of November 22, 2010, asserted against Lieutenant Sullivan and Sergeant Cloud based on § 1983 and assault and battery under Rhode Island law.

- Excessive force claims arising from the decision to leave Plaintiff restrained from December 3-6, 2010, asserted against Major Coburn and Lieutenant Sullivan based on § 1983 and assault and battery under Rhode Island law.

I further recommend that Plaintiff be granted leave to file an amended complaint within thirty days of this Court's determination of this Motion to add additional factual allegations to the pleading of intentional infliction of emotional distress (Count VI), alleging physical manifestations based on the three incidents of excessive force, against Major Coburn, Lieutenant Sullivan, Sergeant Cloud, Sergeant Santucci and Correctional Officer Sullivan.  If no amendment is timely filed or if, after amendment, Count VI remains insufficient to state a claim, I recommend that it be dismissed.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its service.  See Fed. R. Civ. P. 72(b)(2). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
May 31, 2013